## Miles *versus* Williamson.

1. The plaintiff agreed to sell his right, title, interest and claim to land, there being no covenant of warranty; the land being described in the agreement as generally being within tract No. 3133, and having erected thereon a saw-mill and other improvements, it being alleged that one of the vendees had previously examined certain lines on the ground by which the plaintiff claimed; but it was afterwards ascertained that most of the land was within another survey No. 4821; *Held* that no fraudulent misrepresentation by the vendor being found, and the mistake in the number of the tract not rendering the title either better or worse, the defendant being considered as taking the risk of a paramount title, the payment of the purchase-money could be enforced by ejectment.

2. The fact that the vendees had made valuable improvements on the property did not alter the case; they were not entitled to remain in possession till reimbursed for improvements and expenses.

3. The six months allowed by the jury for payment of the purchase-money having expired during the pendency of the writ of error, the same length of time after the affirmance of the judgment was allowed for its payment.

ERROR to the Common Pleas of *Jefferson county*.

This was an action of ejectment, brought in 1851, in which Samuel Williamson was plaintiff, and Robert Miles, W. W. Hodges, and E. N. Rogers, were defendants, to recover the possession of certain land in order to enforce the performance of an article of agreement.

By articles of agreement, dated the 8th day of April, 1848, Williamson agreed to convey to the said Miles and others, free of all encumbrance as to taxes, judgments, bonds, and mortgages, " *all the right, title, interest, or claim* whatsoever of him, the said Samuel, and of the commissioners of the county of Jefferson aforesaid, and of one George Ludley, of Allegheny county, Pennsylvania, to be procured hereafter by the said Samuel, his heirs, executors, or administrators, of, in, and to that part of tract of land in the township of Tionesta, Jefferson county aforesaid, known on the map or draft of said township as No. 3133, containing 1004½ acres, more or less, bounded and more particularly described by the copy of draft and survey hereto annexed."

Also, one other piece or parcel of land, known as part of a larger tract in the said township of Tionesta, No. 3134, containing 151 acres, lying west of and adjoining the said tract No. 3133, and more particularly designated and described by the copy of draft and survey annexed.

It proceeded to state, that, on the said first-mentioned land there was erected a single saw-mill, mill-dam, dwelling-houses, barns, &c., and about 50 acres of improved land; the said last-mentioned piece of land was unimproved, and that the right of the said Samuel thereto was derived under a sale for taxes, by deed, from the treasurer of Jefferson county to him.

A provision was embraced as to the *possession*.  In considera-

tion whereof, the vendees agreed to pay to Williamson $3000; $1200, by a deed for 47 acres of land known as the *Cline farm;* the deed therefor to be made at the same time as the deed from Williamson; $600 on the 1st of July next, when Williamson was to convey; $600 on the 1st of July, 1849, when the assignment from the commissioners of Jefferson was to be procured; and $600 on the 1st of July, 1850, when Williamson was to procure the transfer from Ludley.

On part of the plaintiff the said contract was given in evidence, and attached to it was a draft, which exhibited tract No. 3133, as situated on the Tionesta Creek in Jefferson county. The deed from the commissioners of Jefferson county to Williamson for tract No. 3133; deed from Ludley to Williamson for tract No. 3133, 1004½ acres, and 151 acres of tract No. 3134; also deed from the treasurer of Jefferson county to Williamson for 151 acres of tract No. 3134; and the deed from the plaintiff to the defendants, dated 11th January, 1851, for the land described in the contract, were given in evidence.

On part of the defence it was testified that tract No. 3133 did not cross the Tionesta; that there was no mill or other improvements upon it; that its east line was about three-fourths of a mile west of the saw-mill; and, as to the part of No. 3134 embraced in the contract, it all lay west of Jefferson county, partly in Warren and partly in Venango county.

Testimony was also given to show that at, and prior to the purchase, the plaintiff took one or more of the defendants to the ground, and exhibited a line on the ground, immediately east of the mill and improvements, which he represented as the east line of the tract No. 3133; that he showed them, also, what he called the diagonal line—alleged by him to be the line between the surveys made on the Holland Company and George Mead warrants, and the south-west line of this tract; and alleged that these lines embraced the saw-mill and other buildings and a considerable improvement. It was, however, alleged that it was shown that the land was situated as represented in the diagrams attached made by Richard Irwin, surveyor, and that none of these improvements were on or near it, but that the land exhibited and the improvements referred to were upon tract No. 4821, surveyed on a warrant granted to W. Willink and others, for which the defendants showed a patent to the warrantees, dated October 7, 1799, said now to be owned by Dr. Joseph Shippen.

To this warrant, or tract, No. 4821, *the plaintiff* made no claim and exhibited no title.

It was also stated, that the timber land designated by the plaintiff was situate upon warrant No. 3142, to which the plaintiff made no claim.

Also, that the defendant had made improvements on the land

[Miles *v.* Williamson.]

at an expense of from $3000 to $4000. It was further represented that $600 was paid on the contract, and it was alleged that all the land which the defendants could legally retain under their contract was about 80 acres, worth about $1 per acre.

Also, that the plaintiff was informed by Judge Irwin when on the ground surveying, in 1844, lots 4821 and 4823, where the lines of those Shippen lots were, and that lot No. 3133 lay west, and west of the mill and of all the improvements as represented in the diagram.

Irwin testified: "The plaintiff was there in 1844, when I surveyed lot No. 4821 for Ludley. I told him the location of 4821 and of the lines and corners. He said he was familiar with them. He insisted that No. 4821 lay one tract further east, and *that No. 3133 covered the mill property.*"

On the part of *the plaintiff*, testimony was given in order to show that Rogers, one of the defendants, before the contract with Williamson, made inquiry as to the land claimed by Williamson, and was told that Wiilliamson had no title; but he said he knew all about Williamson's claim, and that possession was all he wanted.

Knox, President Judge, charged as follows:—

"This is an action of ejectment for a tract of land, said to contain 1004 acres, described as warrant No. 3133, on which is a saw-mill, 50 acres improved, &c.; and 150 acres, No. 3134, lying adjoining the other tract, and west of it. The plaintiff claims the right to recover under a previous possession, and an article of agreement between the parties to this suit.

"From the evidence, it appears that a man by the name of Ball first made the improvement, as early as 1826. Before 1839 Ball sold to one Ludley, whose tenant was dispossessed by the plaintiff, claiming under treasurer's title from a sale in Venango county. The plaintiff remained in possession until the 8th of April, 1848, when he entered into a contract with the defendants for the sale of the property in dispute; to enforce which this suit is brought.

"The plaintiff's previous possession and contract is sufficient to enable him to recover, unless there is something in the defence which would render a recovery inequitable.

"The defendants contend that the mill tract was sold to them as warrant No. 3133, and the. other 150 acres as 3134. That, upon examination, it is found that the mill tract is 4821, and that the 150 acres is upon 3142; and, as they get nothing by their purchase, except about 80 acres, the contract ought not to be enforced against them:

"1st. Because it was fraudulent on the part of the plaintiff, and therefore void.

"2d. That, as the consideration had failed, equity would relieve, even in the absence of fraud.

"The *plaintiff* alleges that the location is in accordance with

Vol. XII.—18

[Miles *v.* Williamson.]

the contract; 2d. That, if it is not, there was no designed mis-representation, but a mere mistake; and, as defendants have not been injured by the mistake, the contract should be enforced.

"The first question for the jury is the location. If the jury find the location to be as is contended for by the plaintiff, and that he has complied with all the stipulations in his contract, he is entitled to recover; but if the location is found as alleged by the defendants, the question of fraud would arise.

"Did the plaintiff know that he was on warrant No. 4821, and that his claim to 3133 did not cover the mill tract, and that the 150 acres was not on 3134?

"If he knew this, and he fraudulently represented to the contrary, and the defendants were induced to purchase under this false representation, the plaintiff cannot recover. The burden of proof is upon the defendants to establish this fraud.

"If there was no actual fraud in the case, but a mutual mistake, the contract is not to be entirely set aside, but equity will relieve to the extent of the mistake. That is, if the plaintiff sold, and the defendant purchased, under a mutual mistake as to the location of the land, and the defendants have sustained injury thereby, they are entitled to a deduction from the purchase-money, equal to the actual injury sustained.

"1st. Is there any injury to defendants from the fact that the mill is upon 4821, instead of 3133? Was the land which embraced the subject-matter of the contract truly pointed out to them? Is their title as good to this tract as though its number was 3133? If so, there should be no deduction on this account. By the terms of the contract, they will observe that there was to be *no warranty of title*.

"Was the treasurer's title of any avail? If the land was *seated* when the taxes were assessed, the deed would vest no title. Ludley's deed releases his interest in the tract, mentioning it however as 3133. Then as to the 150 acres:

"If Judge Irwin's location of the land is correct, the plaintiff had no claim to the 150 acres; and if the jury find from the evidence that the defendants were induced to purchase under the representation of the plaintiff that he was the owner; if he pointed it out to them as his; if he induced them to believe that the deed from the commissioners of Jefferson county embraced this land, when in truth he had no title to it, equity would require that the defendants should receive an allowance to the extent of the damage sustained by reason of the common mistake.

"If the jury find for the plaintiff, their verdict will be in his favor for the land, to be released upon the payment of the amount which they may find to be due upon the contract, within such time as they may deem, under all the circumstances of the case, reasonable."

Verdict "for the plaintiff, to be released upon the payment of $2899.43 on the 1st day of November next."

It was, *inter alia*, assigned for error: 2. That the Court erred in not charging that if the vendor misrepresented the location of No. 3163, and showed upon the ground false lines, by which the defendants were induced to purchase, he cannot enforce the contract or require the surrender of the possession. 3. In submitting to the jury whether any injury resulted to defendants from the fact that the mill is upon No. 4821, instead of No. 3123; and whether defendants' title is as good to "tract No. 4821, as though its number was 3123;" and charging that "if so, there should be no deduction." 4. In charging that, if the location is found as alleged by the defendants, the question of fraud would arise, "which defendants must prove;" and if there was not actual fraud, but a mutual mistake, the contract would not be entirely set aside.

*Johnson*, for plaintiff in error.—It was asked that the contract be rescinded on account of failure or defect of title, and that the defendants below be permitted to remain in possession until reimbursed the payment on account of purchase-money and for improvements. If an entire misapprehension existed as to the location, originating with the vendor, and acted upon by both parties, equity will relieve; and where valuable improvements have been made under the mistaken impression, the vendee will not be required to surrender the possession: *Story's Eq.* §§ 140–3.

It was, however, alleged that this was not a case of mutual mistake, as the defendants below had not equal knowledge with the plaintiff; that their information was derived from him. A vendee may not be bound either to surrender possession or pay the price, if he bargained for a title and the vendor is unable to make it: 6 *Watts* 299; 2 *Id.* 482–6; 9 *W. & Ser.* 82; 2 *Harris* 333; 3 *Barr* 21, Miles v. Stevens; also 5 *W. & Ser.* 478.

3d assignment. The position assumed by the Court is, that the title exhibited by the plaintiff to tract No. 3133 was worthless, and that, if the location had been on it, the defendants gained nothing by the purchase, and if nothing be gained by *not* being located upon it, the defendant is in no worse a condition. The plaintiff's title to the most of lot No. 3133 was worthless, because less than half of the tract is in Jefferson county, where it was sold for taxes. But the validity of plaintiff's title to lot No. 3133, was not questioned in the case; the question was as to *location*. If the location and title both failed, are the defendants bound to pay? Whether the plaintiff's title were good or bad, defendants were willing to incur the risk of an undisturbed possession under it; but they did not agree to risk a conflict with the Shippen title for lot No. 4821. Can the defendants be compelled to take the

[Miles *v.* Williamson.]

latter and pay for the former? The Court, therefore, erred in submitting to the jury to say whether the defendants' title is as good to lot No. 4821, as though its number was 3133; and if so, no deduction should be made.

As to No. 3133, there was no known outstanding title; as to the other tract, there was. The defendants had a right to purchase a chance for the one, without being forced to hazard the other.

*Schofield,* for defendant in error.—No point, such as suggested in the 2d assignment, was put to the Court. But if it had been, there was no evidence that Williamson misrepresented the location of No. 3133. He pointed out the lines which embraced his claim. He did not say that the land embraced by them was No. 3133. He did not call it by any number. On the trial, nothing was developed as respects Williamson of which he had not before given information.

As to the *fourth* assignment: There are some kinds of mutual mistakes which avoid a contract; others against which equity will relieve to the extent of the injury; and others against which there is no relief. The mistake complained of in this case was not in the *location*. *That* is where the defendants have taken possession. If any mistake existed, it consisted in calling the tract No. 3133 in the contract as part of the description. But there were ground-marks referred to in the contract which controlled such number. It was thus only a misdescription. Before purchase, the vendees knew all they now know as to the number of the tract and the title of Shippen, and they learned it from Williamson. The Court should have charged that if there were a mistake as alleged, the vendees had contracted to take the risk of it: *Story's Eq.* 150-1; but instead of doing so, the jury was instructed to grant relief to the extent of the injury. The jury found the number to be 3133; but if they had found otherwise, it would not have affected the title to be procured from Williamson, who agreed to convey his own title and to procure the title of Jefferson county and of Ludley. No new title would have been derived from these sources with any other number. But if there was a failure of title, it did not avoid the contract. The defendants purchased the title as it was.

It was further stated that this was not a case of even mutual mistake; that the number was disputed; both parties knew it; the surveys of Blood and of Irwin were known to both parties; Blood had one view and Irwin another; both were submitted to the jury, and they decided in favor of Blood's view of the matter.

As to the small tract, the vendees showed no outstanding title; but still the Court instructed the jury to deduct the value of this lot, if they found the number different from the one mentioned in

[Miles v. Williamson.]

the contract. But they found the whole amount, and thus decided in favor of the number mentioned in the contract. And yet rather than have a new trial granted, the value of this lot was released.

Third assignment: The Court instructed the jury that it made no difference to the vendees whether the number of the mill tract was 3133 or 4821. If Williamson's title to 3133 covered land in another county under a tax sale, it was valueless. If it covered the *mill* tract it was also valueless, because the land was improved, and it was beyond the limits of Jefferson county. The title is not worse affected by a mistake in the number. In the case of Miles v. Stevens, 3 *Barr*, it was decided that to avoid a contract the mistake must be *of the essence* or *sine qua non* of the contract. In this case Williamson did not sell one tract and convey another. He sold the land in question and gave possession of it. The two tracts lay together; and if the number of the smaller tract was rightly stated in the contract, the other was also.

*Johnson*, in reply.—There were no original lines on the ground applicable to Williamson's location of 3133, except such as were the lines of other warrants. In 1844, Williamson got Blood to make a survey and mark lines, so as to include his improvements.

The argument on part of defendant in error does not show how land surveyed on warrant No. 4821 can be recovered in an ejectment for No. 3133. There was no possession of lot No. 3133, the land described in the writ, the land to which the plaintiff's claim is applicable, and the land described in the contract of purchase. The land occupied by the defendants was not known as No. 3133, and never was so called, except by the plaintiff. In such a case a Court of Chancery should not decree specific performance: 1 *Ves. & Bea.* 526; 1 *Parsons' Eq. Cases* 45–6; *Id.* 95; 1 *Sug. on Vend.* 385; *Id.* 387. It is sophistry to say that there is no failure of title because the defendant got the land pointed out by the plaintiff, and all the title to tract No. 3133 that the contract required. The contract required the title to be applicable to the territory; a concurrence of title and possession: 5 *Bin.* 361; 5 *W. & Ser.* 51; 3 *Id.* 390; 3 *Watts* 367; 5 *Barr* 35; 1 *Rawle* 376.

A vendee who rescinds an agreement is not bound to give up the agreement till he has been repaid: 2 *Barr* 240, Spalding v. Hedges; 2 *Id.* 34.

In ejectment by the vendor he must show that he has performed his agreement, and put himself in a condition to compel a defendant to perform his covenants.

Instead of procuring the title of the commissioners of Jefferson county for the land sold by him, the plaintiff tendered a deed for

land somewhat distant from it.    If it were true that the Balltown mill property had been misnamed in the neighborhood 3133, the commissioners' deed for lot No. 3133 is not a compliance with the plaintiff's contract to procure their conveyance for the Balltown mills and farm which are on lot No. 4821.

The defendant should be allowed to retain the possession until reimbursed the money paid and amount expended in improvements prior to August, 1849, when the surveys of Irwin, Struthers, and Dobbs disclosed the fact and settled the question that Balltown was upon the Shippen lot No. 4821.

The opinion of the Court was delivered by

BLACK, C. J.—The plaintiff below sold the land for which this ejectment is brought in 1848 to the defendants.    The vendees saw the land, examined the lines on the ground, investigated the vendor's title, and took it at their own risk.    They got possession of the very land which they meant to buy, and which the other party intended to sell them.    But the most of the land is described as tract No. 3133, in the agreement, as well as in certain previous title papers, whereas it is in fact within a survey, numbered 4821. The defendants insist that this error entitles them to keep the land without paying the purchase-money.    They will neither rescind the contract nor perform it, and this action is brought to compel one or the other.

The Court was not requested in writing to charge on any particular point.    We must therefore deal with that which the judge did say, without reference to the omissions complained of.    The jury were instructed that although the vendees agreed to run the risk of the title, yet if the vendor was guilty of any fraudulent misrepresentation the contract was void, and he could not recover; and that, if the contract was made under a mutual mistake injurious to the vendees, there should be a deduction from the purchase-money large enough to compensate for the loss.    It is impossible to see how anything better for the defendants could have been done.    The jury negatived the allegation of fraud, and, by allowing nothing to the defendants for the mistake in the number, they declared their conviction that it did no injury.    The vendees got possession of the land they bought with perhaps a defective title; but the verdict is conclusive upon us that the title would have been no better than it is if the land had been found to lie within the limits of the survey which was supposed to embrace it.

The defendants complain of it as a hardship that they should be compelled to surrender possession after making improvements. They took the title at their own risk, and of course improved the land on the same terms.    A vendee cannot improve away the vendor's right to the purchase-money.    One who has bought land with his eyes open, and without a warranty, is as much bound to

[Miles *v.* Williamson.]

pay for it after he puts up a building on it as he was before. These defendants are not asked to surrender the land, and lose their improvements. They may keep both if they will perform their covenant, and pay what they agreed to give the plaintiff for the interest he conveyed to them. If it should hereafter be taken by the owner of a paramount title, that is the very peril they promised to encounter, and at all events it will not be the fault of their present adversary.

The judgment of the Court of Common Pleas of Jefferson county, in favor of the defendant in error for the land claimed in the action, is affirmed; but forasmuch as the time limited for the payment of the purchase-money has expired during the pendency of this writ of error, it is now here considered and adjudged that the same be extended, and that the said judgment shall be released if the plaintiffs in error shall within six months from this date pay or cause to be paid unto the defendant in error the principal and interest thereof, with costs of suit.

LEWIS, J., dissented.